**E-FILED on** 2/10/12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEXTG NETWORKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ONE BEACON AMERICA INSURANCE COMPANY, <br><br> Defendant. | No. 11-cv-05318-RMW <br><br><br> ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND <br><br><br> **[Re Docket No. 14]** |

Plaintiff NextG Networks, Inc. ("plaintff") brings claims for breach of contract, declaratory relief and breach of the covenant of good faith and fair dealing against defendant One Beacon America Insurance Company ("defendant") resulting from the insurer's refusal to pay for plaintiff's participation in a pending administrative investigation. Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons below, the court grants the motion to dismiss with thirty days leave to amend.

## I. BACKGROUND

This action arises out of an October 2007 fire that burned over 3,800 acres in the Malibu area of Southern California (the "Malibu Fire").  The fire allegedly started when utility poles partially owned and maintained by plaintiff fell to the ground and made contact with nearby vegetation.  *See* Dkt. No. 14, Ex. A (Order Instituting Investigation).[1]

At the time of the Malibu Fire, plaintiff was insured under a primary Commercial General Liability Policy issued by defendant (the "Policy").  Dkt. No. 11 (Compl.) ¶ 6.[2]  The policy requires defendant to defend plaintiff against any "suit" seeking "damages" as a result of "bodily injury" or "property damage."  Compl., Ex. A at 1.  In late 2007 and 2008, plaintiff was joined as a defendant in one or more civil actions (the "Civil Actions") stemming from the Malibu Fire.  Compl. ¶ 8.  Pursuant to the policy, plaintiff requested that defendant pay for its defense.  *Id.* ¶ 9.  Defendant accepted, appointing the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker LLP (the "Wilson Firm") to act as plaintiff's counsel of record in the various civil actions.  *Id.*

On January 29, 2009, the California Public Utilities Commission ("CPUC") initiated an investigation into whether plaintiff and other entities had "violated any provision of the Public Utilities Code, general orders, other rules, or requirements regarding their facilities linked to the Malibu fire."  Order Instituting Investigation at 4.  The CPUC indicated that plaintiff would be required to appear at public hearings and reply to specific questions, and that the investigation would determine the appropriate remedies for any proven violation.  *See id.*

Subsequently, plaintiff advised defendant that "legal and/or other professional assistance" was necessary to "participate meaningfully" in the CPUC investigation, and asked that defendant pay the costs of such assistance.  *Id.* ¶ 12.  Defendant refused.  *Id.*  In a letter dated July 12, 2010,

---

[1]  The court takes judicial notice of the Order Instituting Investigation because it is a public record "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (The court "may take judicial notice of filings and other matters of public record*."*).  Unlike the allegations of the complaint, however, the court does not assume the content of such a document to be accurate in considering this motion.

[2]  Plaintiff was also covered by a Commercial Umbrella Liability Policy issued by defendant, and alleges that defendant breached both policies.

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
No. 11-cv-05318-RMW
EDM                                   2

defendant again rejected a similar request, indicating that it "has no obligation to defend or indemnify [plaintiff] in the PUC Regulatory Proceeding." *Id.* ¶ 11. Plaintiff made four additional requests that defendant cover the fees associated with the CPUC investigation between December 6, 2010 and May 23, 2011. *Id.* ¶ 15. Each request was rejected. To date, plaintiff alleges that it has incurred "legal and/or professional fees" related to its participation in the CPUC investigation in excess of $500,000. *Id.* ¶ 18.

While defendant denied plaintiff's requests to pay for its CPUC investigation-related expenses, it authorized the Wilson Firm to participate in "various aspects" of the investigation. *Id.* ¶ 14. According to plaintiff, the Wilson Firm's participation was encouraged because defendant "knew or believed that the orders, rulings, determinations, motion practice, discovery and other activity in connection with the Fire Investigation and/or Proceeding had the potential to directly and substantially affect [defendant's] liability, if any, in the Civil Actions." *Id.* ¶ 14.

Plaintiff filed the instant action on November 30, 2011. It alleges that in refusing to fund plaintiff's participation in the CPUC investigation, defendant has breached its contractual obligations under the policy, and seeks a declaratory judgment that defendant is required to pay any "legal and/or professional fees and expenses that have been or may be incurred" in connection with the investigation. *Id.* ¶ 37.

## II. DISCUSSION

**A. The costs of participating in the CPUC investigation may fall within the duty to defend if they are "reasonable and necessary" to minimize liability in the civil actions**

Standard commercial general liability insurance policies require the insurer to defend the insured in any action seeking damages for a covered claim. The duty to defend "entails the rendering of a service, viz., the mounting and funding of a defense … in order to avoid or at least minimize liability." *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 58 (Cal. 1997) (internal citations omitted). The instant dispute turns on whether the costs associated with plaintiff's participation in the CPUC investigation are "reasonable and necessary" to minimize plaintiff's potential liability in the pending civil actions. *Id.* at 60-61.

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
No. 11-cv-05318-RMW
EDM                                3

1 In *Aerojet-General Corp.*, the insured, a manufacturer of aerospace equipment, discharged hazardous substances at its Sacramento, California plant for decades, causing significant property damage. The insured was sued by numerous entities, including private plaintiffs, the State of California and the United States. In response to both the private actions and various governmental decrees, the insured spent approximately $26 million in "site investigation expenses" to investigate the extent of the contamination and the viability of cleanup options, and to monitor the spread of waste from the site. The trial court found that the insurer was liable for the insured's "legal" expenses, but that investigation expenses did not fall within the scope of the duty to defend.

The California Supreme Court disagreed, holding that investigation expenses could constitute "defense costs" as long as such expenses: (1) were incurred within the temporal limits of the insurer's duty to defend, i.e., between tender of the defense and conclusion of the action; (2) were connected to a reasonable and necessary effort to avoid or at least minimize liability; and (3) were reasonable and necessary for that purpose. *See id.* at 60-61. The Court further concluded that whether expenses are "reasonable and necessary" must be assessed under an objective standard. *Id.* As the California Court of Appeal later clarified, "the subjective motivations of the insured and/or its attorneys are not relevant in the analysis." *Barratt American, Inc. v. Transcontinental Ins. Co.*, 102 Cal. App. 4th 848, 858 (Cal. Ct. App. 2002) (citing *Aerojet-General Corp.*, 17 Cal. 4th at 63). Instead, the question is whether a "reasonable insured would have engaged in a similar defense strategy." *Barratt American, Inc.*, 102 Cal. App. 4th at 863.

As an initial matter, the parties debate the applicability of *Aerojet* and its progeny to the case at hand. Defendant first argues that *Aerojet* is inapposite here because plaintiff seeks legal fees rather than expenses associated with "investigation, remediation or abatement." Dkt. No. 16 at 4. The court does not interpret *Aerojet* to be limited to certain classes of expenses. Indeed, *Aerojet* specifically rejected the argument that the fact that site investigation expenses were "peculiar" to toxic tort claims was of legal significance. *Aerojet-General Corp.*, 17 Cal. 4th at 65. Furthermore, this court has previously applied *Aerojet* to determine whether legal fees incurred in a non-covered action were recoverable under the duty to defend. *See Kla-Tencor Corp. v. Travelers Indem. Co. of Illinois*, No. 02-05641, 2004 WL 1737297, at *7 (N.D. Cal. Aug. 4, 2004) (costs of prosecuting a

patent infringement claim could be reasonable and necessary to minimizing liability in a related disparagement case where allegedly disparaging statements concerned infringement of the patent). Defendant also attempts to distinguish *Aerojet* by noting that the investigative costs in that case could have been characterized as CERCLA "response costs" covered by the insurer's duty to indemnify, while "there is *no possibility* that [plaintiff] will face liability for 'damages' in the PUC Investigative proceeding." Dkt. No. 16 at 5 (emphasis in original). However, as "it is plain that the insurer's duty to defend is broader than its duty to indemnify," *Aerojet-General Corp.*, 17 Cal. 4th at 59, the fact that defendant will not ultimately be obligated to indemnify plaintiff for penalties assessed by the CPUC does not establish the boundaries of its duty to defend. The court thus finds that the principles articulated in *Aerojet* are applicable in this case.

The court also finds unpersuasive the argument that costs incurred in responding to a governmental order are not included within the duty to defend. Expenses assumed by an insured are "potentially recoverable even though they may serve more than one objective." *Barratt American, Inc.*, 102 Cal. App. 4th at 860. The costs of participating in the CPUC investigation may serve to both satisfy the agency *and* minimize potential liability in the civil actions. *See Aerojet-General Corp.*, 17 Cal.4th at 63 (noting that site investigation expenses were most likely incurred "both to resist liability and to satisfy the government"). Regardless of the impact of or the impetus for such expenditures, as long as plaintiff can show that a "reasonable insured would have engaged in a similar defense strategy," the costs may be recoverable. *Barratt American, Inc.*, 102 Cal. App. 4th at 863.

Defendant next argues that because the CPUC proceeding is not a "suit" for "damages" under the terms of the policy, it is not covered even though it "shares facts" with civil actions for which a defense has been tendered. Dkt. No. 16 at 5. Defendant relies primarily on *United Pac. Ins. Co. v. Hall*, 199 Cal. App. 3d 551 (Cal. Ct. App. 1988), which held that an insurer was not liable for defending a juvenile criminal proceeding although it had undertaken the defense of a related civil action, because the criminal proceeding was not a "suit" for "damages" covered by the insurance policy. *Hall* is unavailing here for two reasons. First, *Hall* preceded *Aerojet* by nearly a decade, and is therefore of questionable precedential value. Second, the *Hall* court expressly considered whether

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
No. 11-cv-05318-RMW
EDM 5

United States District Court
For the Northern District of California

the expense of defending the juvenile proceeding was "reasonably necessary" to the defense of the civil action, but rejected the plaintiff's arguments that the criminal trial could be used as a discovery device or an opportunity to observe witness demeanor. *See Hall*, 199 Cal. App. 3d at 557. Other cases finding no duty to defend in criminal actions are even further afield. *See Stein v. Int'l Ins. Co.*, 217 Cal. App. 3d 609, 615 (Cal. Ct. App. 1990) (no duty to defend in criminal action where no related civil action ever filed); *Perzik v. St. Paul Fire & Marine Ins. Co.*, 228 Cal. App. 3d 1273, 1275 (Cal. Ct. App. 1991) (same). Similarly, *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th 857 (Cal. 1998), which held that an administrative action *alone* was not a "suit" for "damages" triggering the duty to defend, is distinguishable because it did not involve related actions for which the insurer had already tendered a defense. In sum, none of the cases cited by defendant forecloses the possibility that the cost of participating in an administrative proceeding where "damages" are not sought may be recoverable *if* such costs are reasonably necessary to minimize liability in the civil actions.

## B.     Plaintiff has failed to demonstrate that the costs are "reasonable and necessary"

In order to recover from defendant, plaintiff bears the burden of demonstrating the relationship between the $500,000 it alleges to have spent defending the CPUC investigation and the minimization of liability in the civil actions. *See Aerojet-General Corp.*, 17 Cal. 4th at 64; *Barratt*, 102 Cal.App. 4th at 863. Ultimately, plaintiff must "establish[] a connection between the particular [costs] and the defense theory" being advanced in a covered action. *Id.* Plaintiff argues that such an inquiry is too fact-intensive to be considered on a motion to dismiss. *See* Dkt. No. 15 (citing *Barratt*, 102 Cal.App. 4th 868; *Kla-Tencor Corp.*, 2004 WL 1737297). However, while each of the cases cited by plaintiff involved a more developed factual record than is presently before the court, that does not relieve plaintiff of its burden to include in its complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Courts considering whether particular costs fall within the duty to defend have performed searching analyses. In *Barratt*, the insured was a residential developer sued by 70 homeowners for construction defects in their homes. As the litigation progressed, the insured conducted inspections

1  and repairs of a number of nonplaintiff homes in the same development, incurring $514,685.33 in

2  costs. *Barratt*, 102 Cal. App. 4th at 853. In a subsequent dispute with the insurer over liability for

3  those costs, the insured argued that one purpose of repairing nonplaintiff homes was to develop

4  information to assist in the defense of the ongoing litigation. The court of appeal found the

5  argument plausible, but held that meaningful proof establishing a connection between the particular

6  repairs and the defense theory was lacking. *See id.* at 861, 863. First, there was no evidence that the

7  problems found at the nonplaintiff homes were similar to the problems complained of by the

8  plaintiff homeowners. Second, it was not enough that such repairs were "helpful" or "useful."

9  Rather, the plaintiff was required to present evidence "that a reasonable insured would have engaged

10 in a similar defense strategy, which necessarily involves a consideration of whether the benefits of

11 the strategy are worth the cost." *Id.* at 862.

12 In *KLA-Tencor*, the insured filed an action for patent infringement. The insured later filed

13 another suit against the same defendant for infringement of a different patent. In the second suit, the

14 defendant filed counter-claims against the insured for, *inter alia*, making disparaging statements that

15 included a remark that the defendant "clearly has infringed" the patent at issue in the first action.

16 *KLA-Tencor*, 2004 WL 1737297, at *2. Ultimately, the insured sought "defense costs" for

17 prosecuting the first patent suit, arguing "essentially, that the best defense to the disparagement

18 counterclaims was showing that the [first] patent was valid, and further that [the counterclaimant's]

19 products infringed that patent." *Id.* at *4. The court conducted an in-depth factual analysis,

20 awarding costs for prosecuting the first patent suit but disallowing other costs that were "too far

21 afield" from the disparagement counterclaims. *Id.* at *8.

22 Unlike in *Barratt* and *KLA-Tencor*, plaintiff's allegations do not provide enough factual

23 information to determine the relationship between the costs incurred in the CPUC investigation and

24 the defense of the civil action. While the court is mindful that at this stage of the litigation, plaintiff

25 need not provide any *evidence*, it nevertheless must offer factual *allegations* demonstrating it is

26 entitled to relief. Instead plaintiff simply asserts that the "orders, rulings, determinations, motion

27 practice, discovery and other activity in connection with the Fire Investigation and/or Proceeding

28 have the potential to directly and substantially affect [plaintiff's] liability, if any, in the Civil

Actions." Compl. ¶ 10. Such a conclusory statement does not demonstrate that the disputed costs are reasonable and necessary to minimize liability in the civil actions because it does not explain, for example, what orders or rulings may issue from the CPUC, the nature of plaintiff's defense theory in the civil actions, and how findings in the administrative proceeding could impact liability. Such information is ostensibly within plaintiff's control, and is central to a determination of whether the "benefits of [plaintiff's strategy before the CPUC] are worth the cost." *Barratt*, 102 Cal. App. 4th at 862.

Plaintiff also relies heavily on the fact that the Wilson Firm participated in "various aspects" of the CPUC investigation to show that defendant "knew or believed" the CPUC investigation could affect its liability. Compl. ¶ 14. However, "the subjective motivations of the insured and/or its attorneys are not relevant in the analysis." *Barratt*, 102 Cal.App.4th at 858. In addition, as an insurer generally has a right to control the defense of a covered claim, *see Buss v. Superior Court*, 16 Cal. 4th 35, 63 (Cal. 1997), it should not be precluded from having *any* involvement in a related proceeding for fear that it will create exposure to additional defense costs. Finally, it is unclear from the complaint in what "aspects" of the CPUC proceeding the Wilson Firm has been involved, and thus the court cannot conclude from this allegation whether the costs incurred are reasonable and necessary to minimize liability in the civil actions.[3]

In summary, while defendant's duty to defend may encompass the costs of participating in the CPUC investigation, plaintiff has not met its burden to plead facts showing that such costs are reasonable and necessary to minimize liability in the civil actions. Accordingly, the court grants the motion to dismiss with thirty days leave to amend.

---

[3] Plaintiff includes a more detailed description of the Wilson Firm's participation in the CPUC proceeding in its opposition motion. Such allegations are not properly before the court on a motion to dismiss under Rule 12(b)(6). See *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

### III. ORDER

For the foregoing reasons, the court grants defendant's motion to dismiss with thirty days leave to amend.

DATED:     February 10 , 2012

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
No. 11-cv-05318-RMW
EDM          9