1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| NEXTG NETWORKS, INC., | ) | Case No.: 11-CV-05318-RMW |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| v. | ) | MOTION TO DISMISS WITHOUT |
| | ) | PREJUDICE |
| ONEBEACON AMERICA INSURANCE | ) | |
| COMPANY, | ) | **[Re Docket No. 22]** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff NextG Networks, Inc. ("plaintff") brings claims for breach of contract, breach of

the covenant of good faith and fair dealing and declaratory relief against its general liability

insurer, defendant One Beacon America Insurance Company ("defendant"), stemming from

defendant's  refusal to pay for plaintiff's participation in a pending administrative investigation.

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6).  For the reasons below, the court grants

the motion to dismiss without prejudice.

## I. BACKGROUND

**A.      Factual Allegations**

This action arises out of an October 2007 fire that burned over 3,800 acres in the Malibu

area of Southern California (the "Fire"). The fire started when several electrical transmission

towers ("ET towers") fell to the ground during a windstorm and made contact with nearby

1

United States District Court
For the Northern District of California

vegetation.  *See* Dkt. No. 19 (SAC) ¶ 3; Dkt. No. 14, Ex. A (Order Instituting Investigation or "OII").[1]  Plaintiff, a telecommunications company, is one of several entities alleged to have been responsible for the installation of equipment on and maintenance of the ET towers.  *See id.* at 2.

At the time of the fire, plaintiff was insured under a primary Commercial General Liability Policy issued by defendant (the "Policy").  SAC, Ex. A.[2]  The policy requires defendant to defend plaintiff against any "suit" seeking "damages" as a result of "bodily injury" or "property damage." *Id.*, Ex. A at 1.  The policy also contains a "no-voluntary payments" provision stating that "no insured will, except at that insured's own expense, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [the insurer's] consent."  *Id.* at 11.

In late 2007 and 2008, plaintiff was joined as a defendant in one or more private civil actions (the "Civil Actions") related to the fire.  *Id.* ¶ 8.  Pursuant to the policy, plaintiff tendered the defense of the civil actions to defendant.  *Id.* ¶ 9.  Defendant accepted, appointing the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker LLP (the "Wilson Firm") to act as plaintiff's counsel of record.  *Id.*

On January 29, 2009, the California Public Utilities Commission ("CPUC") initiated an investigation (the "CPUC proceeding") into whether plaintiff and other entities had "violated any provision of the Public Utilities Code, general orders, other rules, or requirements regarding their facilities linked to the Malibu fire."  OII at 4.  The agency indicated that plaintiff would be required to appear at public hearings, respond to written discovery, and provide documents in order to "establish that it has not committed [such] violations … , and that the [fire] did not occur as a result

---

[1]     The court takes judicial notice of the Order Instituting Investigation because it is a public record "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (The court "may take judicial notice of filings and other matters of public record.").  Unlike the allegations of the complaint, however, the court does not assume the content of the OII to be accurate in considering this motion.

[2]     Plaintiff was also covered by a Commercial Umbrella Liability Policy issued by defendant, and alleges that defendant breached both policies.  As the operative language in both policies is the same, the court will refer to them collectively as the "policy."

2

Case No.: 11-CV-05318-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE
EDM

**United States District Court**
For the Northern District of California

1    of any violation." *Id.* at 5-6.  The investigation would also determine the appropriate remedies for

2    any proven misconduct. *Id.* at 4.

3            Plaintiff subsequently informed defendant that its participation in the CPUC proceeding

4    required the support of "legal and/or other professionals," and asked defendant to pay for the costs

5    of such assistance.  SAC ¶ 21.  Defendant refused, contending that it had "no obligation to defend

6    or indemnify [plaintiff] in the PUC Regulatory Proceeding."  Dkt. No. 14 ¶ 11.  Plaintiff therefore

7    hired independent regulatory counsel to manage its involvement in the investigation.

8            Over the next several years, it became clear that the CPUC proceeding could impact the

9    outcome of the civil actions.  For example, the civil plaintiffs have purportedly argued that

10   testimony submitted in the CPUC proceeding is admissible in the individual lawsuits, both as

11   substantive evidence and for impeachment purposes.  SAC ¶¶ 13-14.  In March 2012, the Los

12   Angeles Superior Court allowed two civil plaintiffs to amend their complaint on the basis of an

13   unidentified document produced before the CPUC that allegedly supports causes of action for fraud

14   and punitive damages.  *See* SAC, Ex. C at 6.  In granting the motion to amend, the Superior Court

15   noted that the private plaintiffs seek to "pursue this new evidence by amending the complaint,

16   tracking the [CPUC] hearing and conducting additional depositions."  *Id.* at 5.  Plaintiff also asserts

17   that one of its defenses in the civil actions is that its work on the failed ET towers was performed

18   with adequate care and in compliance with CPUC regulations, and that the civil plaintiffs have

19   argued that the CPUC's rulings with respect to these issues are binding in the civil actions.  SAC ¶¶

20   11-12, 16.

21           In addition, plaintiff alleges that the Wilson firm, which continues to defend plaintiff in the

22   civil actions, worked "closely" with plaintiff's regulatory counsel to: (1) prepare plaintiff's initial

23   response to the CPUC; (2) develop testimony by lay and expert witnesses to ensure that such

24   testimony is consistent with the Wilson Firm's strategy in the civil actions; (3) question a CPUC

25   engineer at a deposition to disprove his calculations regarding the safety factors applicable to the

26   failed ET tower; (4) prepare responses to written discovery propounded on plaintiff in the CPUC

27   proceeding; (5) respond to informal data requests; (6) facilitate fact investigation and expert

28

Case No.: 11-CV-05318-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE
EDM

analysis relating to liability issues raised in the civil actions; (7) maintain the integrity of a joint defense[3] in the CPUC proceeding; and (8) monitor discovery in the CPUC proceeding against a third-party against whom plaintiff has asserted a cross-complaint for indemnity in the civil actions. *See* SAC ¶ 19(a)-(h).

While defendant apparently paid for the Wilson Firm's involvement in the CPUC proceeding, it declined several further requests to cover expenses incurred by plaintiff.  SAC ¶ 21. As a result, plaintiff alleges that has been required to spend more than $500,000 in "legal and/or professional" expenses defending itself before the agency.  SAC ¶ 24.

**B.      Procedural History**

In November 2011, plaintiff filed a complaint in this court, alleging that defendant's refusal to assume such costs constituted a breach of its duty to defend under the policy.  Plaintiff sought compensatory damages of at least $500,000 and a declaration that defendant was obligated to cover future expenses related to the investigation.  Defendant moved to dismiss, arguing that because the policy limited its duty to defend to "suits" for "damages," it did not apply to administrative proceedings under California law.  *See Foster-Gardner, Inc. v. National Union Fire Ins. Co.,* 18 Cal. 4th 857 (Cal. 1998) (administrative proceeding is not a "suit" for damages).  In opposition, plaintiff insisted that whether defendant had an "independent" duty to defend the CPUC proceeding was irrelevant.  Instead, plaintiff advanced the rather novel theory that its costs were recoverable under *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38 (Cal. 1997), which found that an insurer could be held liable for expenses incurred in connection with an environmental cleanup effort conducted by its insured if such expenses were "reasonable and necessary" to minimize liability in civil actions for which the insurer owed a duty to defend.  Essentially, plaintiff argued that because the costs of defending the CPUC proceeding were

**United States District Court**
For the Northern District of California

---

[3]      Respondents in the CPUC proceeding include plaintiff, Southern California Edison Company, Verizon Wireless, Sprint Communications Company and AT & T Communications of California.  *See* OII at 1.  With the exception of AT & T, each is also a defendant in the civil action pending before the Los Angeles Superior Court.  *See* SAC, Ex. C.

Case No.: 11-CV-05318-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE
EDM

1    "reasonable and necessary" to minimize its liability in the civil actions, defendant breached its duty

2    to defend *those* actions by refusing plaintiff's requests.

3         On February 10, 2012, the court dismissed plaintiff's claims with leave to amend.  The

4    court found that while plaintiff's expenses could, in theory, be recoverable under *Aerojet*, the

5    complaint failed to "provide enough factual information to determine the relationship between the

6    costs incurred in the CPUC investigation and the defense of the civil actions."  *NextG Networks,*

7    *Inc. v. One Beacon Am. Ins. Co.*, No. 11-05318, 2012 U.S. Dist. LEXIS 16952, at *14 (N.D. Cal.

8    Feb. 10, 2012). Accordingly, the court held that "plaintiff has not met its burden to plead facts

9    showing that such costs are reasonable and necessary to minimize liability in the civil actions." *Id.*

10   at *16.

11        Plaintiff filed its SAC on March 12, 2012.  The pleading contains numerous additional

12   allegations regarding the connection between the civil actions and the CPUC proceeding.

13   However, upon further consideration, the court finds that its previous order failed to distinguish the

14   situation in *Aerojet* from that involved here.  As discussed below, in light of settled principles of

15   California law, the court holds that *Aerojet* is inapplicable where, as here, an insurer accepts the

16   defense of a covered action pursuant to a policy containing a no-voluntary payments provision.

17   The court therefore concludes that the SAC, as currently pled, does not state a claim upon which

18   relief can be granted.

## II. ANALYSIS

### A.    The Duty to Defend Under California Law

21        Standard commercial general liability insurance policies require the insurer to defend the

22   insured in any action seeking damages for a covered claim.  The duty to defend generally vests the

23   insurer with authority to control the defense of the action.  *See New Hampshire Ins. Co. v. Ridout*

24   *Roofing Co.*, 68 Cal. App. 4th 495, 502 (Cal. Ct. App. 1998).  Thus, when an insurer accepts its

25   duty to defend, the insured typically "has no right to interfere" with the insurer's management of its

26   defense. *Safeco Ins. Co. of Am. v. Superior Court*, 71 Cal. App. 4th 782, 787 (Cal. Ct App. 1999).

27   Similarly, where an insurance policy contains a no-voluntary payments provision, the insurer is

28

Case No.: 11-CV-05318-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE
EDM

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    "not liable for any … payments, expenses, or other obligations assumed by the insured without the

2    insurer's consent." *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 981 (Cal. Ct. App.

3    2000).

4          "On the other hand, if the insurer wrongfully refuses to defend … then the insurer forfeits

5    the right to control settlement and defense." *Safeco Ins. Co.*, 71 Cal. App. 4th at 787.  A no-

6    voluntary payments provision may therefore be unenforceable when the insurer breaches its duty to

7    defend.  *See Jamestown Builders v. General Star Indem. Co.*, 77 Cal. App. 4th 341, 347 (Cal. Ct.

8    App. 1999).  "In other words, it is only when the insured has requested and been denied a defense

9    by the insurer that the insured may ignore the policy's provisions forbidding the incurring of

10   defense costs without the insurer's prior consent." *Gribaldo v. Agrippina Versicherunges A. G.*, 3

11   Cal. 3d 434, 449 (Cal. 1970).  In addition, "where the insured is … *compelled* to conduct his own

12   defense, it is uniformly held that he may recover the expenses of litigation, including costs and

13   attorneys' fees, from the insurer." *Id.* (emphasis in original); *see also Isaacson v. California Ins.

14   Guarantee Assn.*, 44 Cal. 3d 775, 791 (Cal. 1980) (where insurer erroneously denies coverage or

15   fails to provide a defense, settlement payment made by insured, if reasonable, creates presumptive

16   evidence of insurer's liability).

17         Of course, even where an insurer undertakes its duty to defend, it is required to act in good

18   faith in dealing with its insured.  *See Safeco Ins. Co.*, 71 Cal. App. 4th at 787.  However, if there is

19   "no duty to defend under the terms of the policy, there can be no action for breach of the implied

20   covenant of good faith and fair dealing because the covenant is based on the contractual

21   relationship between the insured and the insurer." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th

22   1, 36 (Cal. 1995).

23   **B.    *Aerojet-General Corp. v. Transport Indemnity Co.***

24         It is against the backdrop of these well-established rules that the California Supreme Court

25   decided *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38 (Cal. 1997).  In *Aerojet*,

26   the insured, a manufacturer of aerospace equipment, discharged hazardous substances at its

27   Sacramento, California plant for decades, causing significant property damage.  The insured was

28

                                                    6

United States District Court
For the Northern District of California

1   sued by numerous entities, including private plaintiffs, the State of California and the United

2   States.  The insured tendered the defense of the actions to its insurers, which either refused to

3   defend or accepted under an "unreasonable" reservation of rights.  *Id.* at 47.  Subsequently, the

4   insured, under the guidance of independent counsel, spent approximately $26 million in "site

5   investigation expenses" to examine the extent of the contamination and the viability of cleanup

6   options.  *Id.* at 51.

7       In litigation over recovery of those costs, the California Supreme Court considered whether

8   "site investigation expenses … may constitute defense costs that the insurer must incur in fulfilling

9   its duty to defend."  *Id.* at 45.  The court held that such expenses could be "defense costs"—and

10  thus recoverable by the insured—if they were: (1) incurred between the tender of the defense and

11  the conclusion of the action; (2) connected to a reasonable and necessary effort to avoid or at least

12  minimize liability; and (3) reasonable and necessary for that purpose.  *See id.* at 60-61.  Whether

13  expenses are "reasonable and necessary" must be assessed under an objective standard.  *Id.*  As the

14  court explained, "what matters … is whether the site investigation would be conducted against

15  liability by a reasonable insured under the same circumstances."  *Id.* at 62.

16      The *Aerojet* court did not limit its holding to situations in which an insurer breached its duty

17  to defend.  However, it appears that other California courts have allowed recovery under *Aerojet*

18  only after *first* finding that the insurer refused to defend its insured in a covered action.  *See, e.g.*,

19  *Barratt American, Inc. v. Transcontinental Ins. Co.*, 102 Cal. App. 4th 848, 855 (Cal. Ct. App.

20  2002) (finding *Aerojet* applicable where the insurer failed to respond to a tender letter or take any

21  action to defend its insured for more than a year); *KLA-Tencor Corp. v. Travelers Indem. Co.*, No.

22  02-05641 RMW, 2004 U.S. Dist. LEXIS 15376, at *9 (N.D. Cal. Aug. 4, 2004) (applying *Aerojet*

23  after determining that the insurer breached its duty to defend); *State v. Pac. Indem. Co.*, 63 Cal.

24  App. 4th 1535, 1549 (Cal. Ct. App. 1998) (same); *see also Cassady v. Morgan, Lewis & Bockius*

25  *LLP*, 145 Cal. App. 4th 220, 236 (Cal. Ct. App. 2006) (citing *Aerojet* for the proposition that

26  "when an insurer *refuses* to defend an action in which a potential for coverage exists, the insured

27

28

Case No.: 11-CV-05318-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE
EDM

1    may recover defense costs, including attorney's fees allocable to the defense of noncovered claims,

2    unless the insurer can prove they were unreasonable or unnecessary.") (emphasis in original).

3         In light of the insurer's right to control an action for which it has assumed the defense, such

4    a limitation makes perfect sense.  Where an insurer accepts its duty to defend, the adequacy of its

5    performance is typically judged by the result achieved.  Thus, in general, "as long as the insurer is

6    providing a defense, the insurer is allowed to proceed through trial to judgment." *Safeco Ins. Co.*,

7    71 Cal. App. 4th at 789.  If the insurer settles the action within policy limits, it is liable for the

8    entire judgment, and the insured receives the benefit of its bargain under the policy.  If the insurer's

9    tactics result in a judgment above policy limits, the insured may be entitled to recover the amount

10   of the excess judgment by asserting a claim for bad faith.  *See id* at 788; *Doser v. Middlesex*

11   *Mutual Ins. Co.*, 101 Cal. App. 3d 883, 891 (Cal. Ct. App. 1980).

12        Conversely, where the insurer refuses to defend, the insured may recover both any excess

13   judgment and the "expenses of litigation."  *Gribaldo*, 3 Cal. 3d at 449; *Isaacson*, 44 Cal. 3d 791.

14   But an insured's expenditures cannot be recoverable simply because the insured elected to incur

15   them; otherwise, an insurer could be held liable for expenses that far exceed those necessary to

16   defend an action covered by the policy.  Thus, *Aerojet* and its progeny establish an objective

17   standard, requiring the court to consider "whether the benefits of the [insured's] strategy are worth

18   the cost." *Barratt American*, 102 Cal. App. 4th at 863.  Put another way, *Aerojet* stands for the

19   proposition that where an insurer refuses to defend, it is liable for any costs it *would reasonably*

20   *have incurred* had it complied with its contractual obligation in the first place.

21        Accepting plaintiff's theory would turn *Aerojet*'s holding on its head.  In essence, plaintiff

22   asks the court to find that although defendant accepted the defense of the civil actions and engaged

23   competent counsel to manage those proceedings, it breached its duty to defend by failing to carry

24   out plaintiff's defense in a reasonable fashion.[4]  Yet while *Aerojet* makes clear that an insurer's

---

[4]    Plaintiff does not contend that the proceedings in which it is involved comprise a "mixed" action for which defendant is obligated to provide a defense under *Buss v. Superior Court*, 16 Cal. 4th 35, 49-50 (Cal. 1997), which held that where a lawsuit includes some claims that are potentially covered by the policy and others that are not, the insurer must defend the action "in its entirety."  In fact, plaintiff argues that "any ruling regarding whether actions taken by the CPUC …

8

1    refusal to defend may later subject it to liability for certain costs incurred by the insured in its own

2    defense, plaintiff cites no authority holding that an insurer breaches its duty to defend by choosing

3    not to assume such costs in the first place.  Indeed, though there seems to be no case on point, the

4    California Court of Appeal has suggested in dicta that it would reject such a conclusion.  *See*

5    *Safeco Ins. Co.*, 71 Cal. App. 4th at 789 ("[T]he insurer's right to control the defense cannot be

6    denied simply because the insured disagrees with the insurer's decision not to settle or because the

7    insured believes the defense is being poorly handled.").  The court thus concludes that *Aerojet* does

8    not impose on an insurer a prophylactic duty to assume expenses alleged by its insured to be

9    "reasonable and necessary" to minimize liability in a covered action.

10           Moreover, reading *Aerojet* to allow recovery under these circumstances would contravene

11   the policy's "no-voluntary payments" provision.  "California law enforces … no-voluntary-

12   payments provisions in the absence of economic necessity, insurer breach, or other extraordinary

13   circumstances."  *Jamestown Builders*, 77 Cal. App. 4th at 346.  Such clauses are "designed to

14   ensure that responsible insurers that promptly accept a defense tendered by their insureds thereby

15   gain control over the defense and settlement of the claim."  *Id.*  Here, it is undisputed that

16   defendant accepted the defense of the civil actions.  Therefore, enabling plaintiff to recover

17   expenses incurred without defendant's consent—indeed, expenses that defendant explicitly and

18   repeatedly refused to cover—would strip defendant of its contractual right to decide which costs to

19   incur in discharging its duty to defend.  Taken to its logical extreme, such a holding would enable

20   an insured to, for example, depose a witness against its insurer's will and then seek recovery for the

21   cost of the deposition on the theory that acquiring the witness' testimony was "reasonable and

22   necessary" to minimize its liability.  California law clearly does not permit such a result.

23           At oral argument, plaintiff contended that if defendant did not assume the costs of the

24   _____

     may trigger [defendant's] duty to indemnify would constitute an advisory opinion [that] the court
25   can and should decline to render," effectively foreclosing any analysis of whether the "claims"
     asserted by the CPUC are "potentially covered" or not.  Dkt. No. 23 at 12.  Accordingly, for the
26
     purposes of this motion, the court limits its analysis to whether plaintiff may recover based on
27   defendant's duty to defend the civil actions alone.

28

Case No.: 11-CV-05318-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE
EDM

1    CPUC proceeding, defendant would receive a "windfall" because discovery produced at plaintiff's

2    expense before the CPUC could be used in the civil actions.  On a similar note, plaintiff argued that

3    dismissing its claims would diminish the value of its insurance policy vis-à-vis other insureds

4    because it "happens" to operate in a regulated industry in which "litigation" is likely to occur in

5    administrative, rather than judicial proceedings.

6            The court does not find either argument persuasive.  The scope of the duty to defend is

7    defined by contract.  *See, e.g.*, *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th

8    857, 868-69 (Cal. 1998).  Although plaintiff knew or should have known it could find itself

9    embroiled in an administrative action, it contracted and paid premiums for the defense of only

10   "suits" for "damages."  Plaintiff does not claim that the language of the policy is ambiguous or that

11   it reasonably understood at the time the policy was issued that it would cover the defense of

12   administrative proceedings.  *See id.* at 869 ("An insurer has a duty to defend when the policy is

13   ambiguous and the insured would reasonably expect the insurer to defend him or her against the

14   suit based on the nature and kind of risk covered by the policy.").  Thus, if anything, the Wilson

15   Firm's participation in the CPUC proceeding—which the SAC details in great length—resulted in

16   a windfall for plaintiff.

17           Further, under California law, the fact that a non-covered action may impact an insured's

18   liability in a covered action does not affect the nature of the insurer's contractual obligations.  In

19   *Foster-Gardner*, the California Supreme Court considered whether an insurer had a duty to defend

20   an administrative action that arose prior to the filing of a civil complaint under a policy similar to

21   the one at issue here.  The insured argued that the action should be considered a "suit" for

22   "damages" because the agency would make "findings of fact and determinations of law which will

23   determine [the insured's] alleged liability."  *Foster-Gardner*, 18 Cal. 4th at 882.  The insured also

24   contended that a contrary holding would result in a windfall to the insurer because "an insured in

25   the administrative action may be able to limit or even eliminate a carrier's indemnity obligations by

26   vigorously defending against claims of alleged damage."  *Id.*  The court rejected these arguments,

27   reasoning that:

28

Case No.: 11-CV-05318-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE
EDM

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

[A] guilty verdict against [an] insured in [a] criminal proceeding may well affect the insured's ability to meaningfully defend any subsequent civil action. The fact that damaging, perhaps even irrefutable, findings will be made does not mean that a duty to defend arises in the criminal proceeding. Similarly, in an automobile accident, medical reports are written, collision experts consulted, and other information obtained often long before the institution of any lawsuit. The fact that the insured's liability will be affected by such information does not alter the language of the insurance contract which does not require a defense until the lawsuit is filed … [While] insurers have an inherent incentive to participate in those proceedings where the costs are ascertained … [u]nder the language of the policy, … this is a judgment call left solely to the insurer.

*Id.* at 883. *Foster-Gardner* thus teaches that where the duty to defend is expressly limited by contract, such limitations are enforceable even if that results in the insured having the burden of defending related, but non-covered, proceedings.

The court concludes that defendant did not breach its duty to defend the civil actions by refusing to cover expenses incurred by plaintiff in the CPUC proceeding. Similarly, because there is no duty to assume such costs under *Aerojet*, plaintiff cannot maintain a claim for breach of the covenant of good faith and fair dealing. *See Waller*, 11 Cal. 4th at 10 ("[I]f the insurer is under no obligation to defend or indemnify the third party action, it cannot be found liable for either statutory bad faith or breach of the implied covenant of good faith and fair dealing, for its denial of a defense."). Plaintiff's claims for declaratory relief are based on its contract claims, and are therefore also without merit. Accordingly, the court grants defendant's motion to dismiss in its entirety. Because the court's previous order may have limited the theories upon which plaintiff chose to proceed, the court will allow one more opportunity for amendment.

### III. ORDER

For the foregoing reasons, the court grants defendant's motion to dismiss without prejudice. Any amended pleading must be filed within thirty days of the date of this order.

DATED: _____July 23, 2012_____          _____*Ronald M. Whyte*_____

RONALD M. WHYTE
United States District Judge

Case No.: 11-CV-05318-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE
EDM